TYLER V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-294-CR

JIMMY LEE TYLER APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE COUNTY COURT AT LAW OF HOOD COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Jimmy Lee Tyler pled no contest to the offense of driving while intoxicated.  The trial court found appellant guilty and sentenced him to six months’ confinement and a fine of $750, but then suspended the sentence and placed appellant on community supervision for twelve months.  In a single point, appellant complains that the trial court erred when it denied his pretrial motion to suppress all evidence obtained pursuant to the traffic stop.  We affirm.

II.  Factual Background

The only evidence presented during appellant’s suppression hearing was the testimony of Officer Robert Young, a deputy sheriff with the Hood County Sheriff’s office.  Officer Young testified that he received a radio broadcast from Hood County Communications on November 23, 2002 that an unidentified citizen had called to report a beige Chevrolet truck being driven in a reckless manner on U.S. Highway 377.  Officer Young responded and ultimately located what he believed to be the truck described in the broadcast traveling eastbound on Highway 377.

While behind the truck, which was being driven by appellant, Officer Young saw the passenger side wheels cross over the solid white line separating the traveling lane from the shoulder of the highway, or emergency lane.  As Officer Young recalled, appellant’s truck “straddled” the solid white line “for a few moments” before it returned “erratically,” or “as if to turn at an angle,” to the traveling lane.  Appellant’s truck never crossed into oncoming traffic, however, because of a median that separates the eastbound lanes of the highway from the westbound lanes.  Officer Young ultimately pulled appellant over.

Appellant pulled into the parking lot of a liquor store, and Officer Young approached him.  When appellant got out of his truck, Officer Young detected the smell of alcohol on appellant’s breath.  Officer Young asked appellant if he had had anything to drink; appellant stated that he had consumed “five or six” beers.  Appellant further told Officer Young that he had alcoholic beverages in his truck and proceeded to show him where they were located (behind the driver’s seat in a cooler).

Officer Young then had appellant perform three field sobriety tests: the horizontal gaze nystagmus test, the one-leg stand test, and the nine-step walk-and-turn test.  Officer Young testified that appellant’s “eyes exhibited the lack of smooth pursuit; they didn’t track smoothly” when performing the horizontal gaze nystagmus test.  
He further observed “the onset of nystagmus prior to 45 degrees in each [sic] the right and left eye, and distinct nystagmus at maximum deviation in both the right and left eye.”  With regard to the one-leg stand test, appellant set his foot down on the number five count on the first try and the number seven count on the second try.  Officer Young stopped the tests when appellant “almost fell over.”  Appellant also failed to sufficiently complete the nine-step walk-and-turn test.

After attempting to complete the three field sobriety tests, appellant told Officer Young that he had consumed only four beers instead of five or six. Officer Young concluded that appellant was under the influence of alcohol and subsequently arrested him.

III.  Motion to Suppress

In his sole point, appellant argues that the trial court erred when it denied his motion to suppress because he did not commit the offense of failing to maintain a single lane of traffic or driving on the shoulder in violation of the Texas Transportation Code.  Thus, appellant contends that because his actions “do not rise to the level of an offense,” Officer Young lacked reasonable suspicion to detain him.  Appellant further argues that the “anonymous tip” provided by the individual who notified police of his “reckless” driving “was not sufficiently reliable as to allow the officer to be certain that he was stopping the proper vehicle”; therefore, the tip did not in and of itself provide reasonable suspicion to detain appellant.  
The State maintains that reasonable suspicion existed to detain appellant because he did in fact commit the offenses of failing to maintain a single lane of traffic and driving on the shoulder.  Moreover, the State contends that the tip from the concerned citizen provided reasonable suspicion justifying appellant’s detention.

A.  Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State,
 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); 
State v. Ballman
, No. 02-03-00345-CR, 2004 WL 2914999, at *2 (Tex. App.—Fort Worth Dec. 16, 2004, pet. filed).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State,
 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State,
 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. 
 State v. Ross,
 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard, 
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).   Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. 
 Johnson v. State,
 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002);
 
Best,
 118 S.W.3d at 861-62.  However, when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact.  
Johnson,
 68 S.W.3d at 652-53.  When the trial court does not make explicit findings of historical facts, as in the instant case, we review the evidence in the light most favorable to the trial court’s ruling and assume the trial court made implicit findings of fact supporting its ruling, so long as those findings are supported by the record.
(footnote: 1)  
Carmouche
, 10 S.W.3d at 327-28.

B.  Probable Cause to Stop Appellant for Traffic Violation

W
hen a traffic violation is committed in an officer’s presence, the officer has probable cause to lawfully stop and arrest or detain the violator.  
Tex. Code Crim. Proc. Ann.
 art. 14.01(b) (Vernon 1977);
 
Tex. Transp. Code Ann. 
§ 543.001 (Vernon 1999); 
Williams v. State
, 726 S.W.2d 99, 101 (Tex. Crim. App. 1986); 
Rubeck v. State
, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh’g). 
 Thus, we will first examine whether Officer Young observed appellant commit a traffic violation.

1.  Failure to Maintain Single Lane of Traffic

The Texas Transportation Code describes the offense of failure to maintain a single lane of traffic as follows:  “An operator on a roadway divided into two or more clearly marked lanes for traffic: (1) shall drive as nearly as practical entirely within a single lane; and (2) may not move from the lane unless that movement can be made safely.”  
Tex. Transp. Code Ann.
 § 545.060(a) (Vernon 1999).

Appellant argues that he did not commit the offense of failing to maintain a single lane of traffic because there was no evidence that his driving was unsafe.  In 
Martinez v. State
, 29 S.W.3d 609 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d), a state trooper observed Martinez “drift partially onto the shoulder of the freeway with his right tires for one or two seconds and then pull back into his lane of traffic.”  
Id
. at 610.
  
The state trooper pulled Martinez over and subsequently found drugs hidden in the gas tank of the vehicle.  
Id
. at 611.
  
The First Court of Appeals determined that by swerving onto the shoulder, Martinez failed to maintain a single lane of traffic, thus giving the state trooper the authority to stop and detain him for that traffic violation.  
Id
. at 611-12.  Martinez argued that “he did not violate section 545.060 because there was no evidence that the swerve onto the shoulder was unsafe.”  
Id
.  The court, however, reasoned that Martinez’s driving was unsafe because the traffic on the highway that particular night was “moderate to heavy.”  
Id
. at 612.

The instant case is like 
Martinez
.  Here, Officer Young testified that he observed appellant’s truck partially cross over the solid white line separating the traveling lane from the shoulder and “straddle” it “for a few moments.”  The truck then returned “erratically” to the traveling lane.  The offense occurred on November 23, 2002, which was Thanksgiving weekend.  Officer Young testified that “[t]here was a lot of traffic out and there were a lot of people behind me.”

Appellant cites 
State v. Cerny
,
(footnote: 2) 
State v. Arriaga,
(footnote: 3) 
Hernandez v. State
,
(footnote: 4) and
 State
 v. Tarvin
(footnote: 5) 
as support for his argument that he did not commit the offense of failing to maintain a single lane.  These cases, however, are all distinguishable.  In 
Cerny
, the vehicle weaved within its lane and touched the shoulder line.  
28 S.W.3d at 798-99.  There was no other testimony giving further justification for the stop.  
Id
. at 799 (“Terronez did not stop appellee for any other reason than failure to maintain a single lane.”).  
In 
Arriaga
, the officer observed the driver drifting within, but not crossing over, a lane, and the officer could not testify with any certainty as to how many times the drifting occurred.  5 S.W.3d at 805.  In addition, the State in that case did not offer any facts characterizing Arriaga’s driving as “erratic, unsafe, or indicative of intoxication.”  
Id
. at 807.  
Hernandez
 involved a slight drift into another lane that was not shown to be unsafe or dangerous.  983 S.W.2d at 870-72.  In 
Tarvin
, the driver weaved within his lane, and the arresting officer “never testified that he was conducting an investigatory stop, nor did he testify to suspecting any criminal activity other than weaving out of the lane.”  
972 S.W.2d at 912.  

Here, as discussed above, appellant “straddled” the white lane separating his traveling lane from the shoulder before returning “erratically” to the traveling lane “as if to turn at an angle”; he did not merely weave or drift within his own lane.  Considering the amount of traffic at the time and the likelihood of other motorists entering and exiting the highway because of the proximity of the liquor store and a nearby gas station, we hold that the evidence supports the trial court’s implicit finding that appellant’s act of moving out of his lane of traffic, “straddling” the white line separating the traveling lane from the shoulder, and “erratically” re-entering his lane of traffic at an angle was unsafe and therefore a violation of section 545.060(a).
  Thus, Officer Young could have stopped appellant because he saw him fail to maintain a single lane of traffic.  
See Martinez, 
29 S.W.3d at 612
; 
see also Tex. Dep’t of Pub. Safety 
v. 
Nordin
, 971 S.W.2d 90, 94 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (holding reasonable suspicion existed to stop vehicle after vehicle crossed over white line onto shoulder).

2.  Driving on the Shoulder

As part of his failure to maintain a single lane of traffic, appellant drove on the shoulder of the highway.  Section 545.058(a) of the Texas Transportation Code provides that

[a]n operator may drive on an improved shoulder to the right of the main traveled portion of a roadway 
if that operation is necessary and
 may be done safely, but only:

(1) to stop, stand, or park;

(2) to accelerate before entering the main traveled lane of traffic;

(3) to decelerate before making a right turn;

(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;

(5) to allow another vehicle traveling faster to pass;

(6) as permitted or required by an official traffic-control device; or

(7) to avoid a collision.
 

Tex. Transp. Code Ann.
 § 545.058(a) (emphasis added).

Appellant argues that he did not violate section 545.058(a) by driving on the shoulder because there was no evidence that his driving was unsafe; thus, Officer Young did not have reasonable suspicion or probable cause to detain him for this alleged violation.  As the State points out, however, driving on the shoulder is permitted if it is done safely 
and 
it “is necessary.”  
See
 
id
.  Officer Young testified that he observed appellant’s vehicle cross over the solid white line separating the traveling lane from the shoulder and “straddle” it “for a few moments.”  Officer Young further testified as follows:

[Appellant’s attorney]: Okay.  Would it be fair to say that when you observed the traffic violation that was what you believed to be the reasonable suspicion of probable cause to make the stop?

[Officer Young]: Absolutely.

There is no evidence in the record indicating that it was “necessary” for appellant to drive on the shoulder under any one of the exceptions listed in section 545.058(a).  
Id
.  Moreover, the trial court stated the following when it denied appellant’s motion to suppress:

And while I can understand your argument, and I’ll certainly read Tarvin [sic], this was not - - the driving of the Defendant was not merely a touching of the white line, it was - - the testimony is that he actually traveled in the shoulder, which is a violation of the Texas Transportation Code, unless there are certain exceptions to that which the officer identified the exceptions when it is lawful to travel in the shoulder.  So I find, based on a preponderance of the evidence . . . that there was probable cause to make the stop, and therefore, there was probable cause to continue in the field sobriety tests. 

Giving deference to the trial court’s findings, we conclude that the act of appellant’s vehicle’s traveling on the shoulder was also independently sufficient to provide probable cause to stop appellant.  
See Garcia, 
43 S.W.3d at 530; 
see also Martinez
, 29 S.W.3d at 612 (
“Although the trial court did not specifically address driving on the shoulder, the trial court could have found a violation of this statute to be a proper basis for the stop.”).  Accordingly, appellant’s act of moving out of his lane of traffic onto the shoulder and “erratically” re-entering his lane of traffic at an angle constituted two separate traffic violations for which Officer Young had probable cause to pull him over.

We overrule appellant’s sole point.
(footnote: 6)
IV.  Conclusion

Having overruled appellant’s sole point, we affirm the trial court’s judgment. 

TERRIE LIVINGSTON

JUSTICE

PANEL B: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

PUBLISH 

DELIVERED:  March 24, 2005

FOOTNOTES
1:
At the conclusion of appellant’s motion to suppress hearing, as the trial court denied the motion, it did provide several informal “findings” in support of its decision.  However, appellant did not request formal findings of fact and conclusions of law, and there are none in the record.

2:
28 S.W.3d 796 (Tex. App.—Corpus Christi 2000, no pet.)
.

3:
5 S.W.3d 804 (Tex. App.—San Antonio 1999, pet. ref’d).

4:
983 S.W.2d 867 (Tex. App.—Austin 1998, pet. ref’d)
.

5:
972 S.W.2d 910 (Tex. App.—Waco 1998, pet. ref’d).

6:
Because we have determined that Officer Young had probable cause to stop appellant based on his observance of two traffic violations, we need not address appellant’s contention that the anonymous tip did not provide Officer Young with reasonable suspicion or probable cause to stop appellant.  
See
 
Tex. R. App. P.
 47.1.