NO. 07-04-0304-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 2, 2005

_____

THE STATE OF TEXAS, APPELLANT

V.

ANDREW BENNETT LOCKHART, APPELLEE
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 48,683-B; HONORABLE JOHN BOARD, JUDGE
_____

Before REAVIS and CAMPBELL, JJ.[1]


**OPINION**


This is a State's appeal from an order granting appellee Andrew Bennett Lockhart's motion to suppress evidence obtained as a result of a traffic stop. We will reverse the trial court's order.

Lockhart's arrest and prosecution arose out of a traffic stop by Department of Public Safety trooper Chris Ecker. On the evening of November 27, 2003, Lockhart and Daniel

_____

[1]Former Chief Justice Phil Johnson was on the panel that heard oral argument. He did not participate in the decision. Tex. R. App. P. 41.1(b).

DeGuardi were driving on Interstate 40 near Amarillo, traveling from Tucson, Arizona to Ohio in DeGuardi's Ford Expedition. Lockhart was driving in the right lane of the highway when he passed Trooper Ecker's car parked on the shoulder of the road near mile marker 62. Ecker had just completed issuing a traffic citation and put his patrol car in drive when he saw the truck pass "pretty close" to his patrol car, drawing his attention. Although Ecker did not believe any offense had been committed, he decided to "go look at his driving."[2]

Ecker pulled onto the roadway and caught up with the truck "fairly quickly." Ecker denied racing to catch the truck but, when questioned about stopping the truck approximately one mile from his initial location, he noted his patrol car was a Chevrolet Camaro and "it will catch him." After Ecker caught up with the truck he said the right tires crossed over the white line on the right side of the roadway[3] for a few seconds "more than once." Based on his observation, Ecker decided to stop the driver. Ecker turned on his emergency lights and Lockhart stopped near mile marker 63.

Ecker prepared a warning citation for "driving on improved shoulder" to issue to Lockhart. He then obtained permission from DeGuardi, the owner, to search the vehicle where he discovered three of five bags in the cargo area contained packages of marijuana. That discovery lead to Lockhart's prosecution.[4]

---

[2] The trooper further testified, "I wondered why he didn't pull over. Usually people will pull over."

[3] Several opinions identify this stripe as the "fog line" and we will use that term here.

[4] Ecker arrested both occupants. This record does not reflect whether DeGuardi was prosecuted.

At a hearing on Lockhart's motion to suppress, he argued the initial stop was illegal.[5] Lockhart and Ecker testified, Lockhart denying that he crossed over the line or hit the rumble strip.[6] After hearing the testimony, the court granted the motion to suppress, commenting the trooper had not seen any violation of the law when he decided to pursue Lockhart and follow him, awaiting a violation to justify a traffic stop.

The State timely perfected appeal from the order. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon 2003). The trial court later made findings of fact and conclusions of law. They included findings that as Ecker caught up to Lockhart's vehicle he saw its right tires "go over the solid white stripe 'a couple of times'," and the tires did not make contact with the rumble strip. The conclusions of law stated, in part:

> 2. Trooper Ecker did not observe . . . Lockhart commit a criminal offense prior to the traffic stop.

> 3. Lockhart's vehicle was not being operated in violation of a traffic law immediately prior to the traffic stop[.]

> 4. Trooper Ecker initiated his stop of Lockhart's vehicle on a "hunch."

> 5. Trooper Ecker's stop of Lockhart was primarily motivated by a non-community care-taking purpose, and

---

[5] Lockhart also argued that DeGuardi did not have authority to consent to the search of the bags. Applying the holding in *State v. Allen*, 53 S.W.3d 731, 733 (Tex.App.–Houston [1st Dist.] 2001, no pet.), the trial court overruled Lockhart's challenge to the consent given by the truck's owner. That ruling is not challenged here.

[6] Although Ecker's car was equipped with a video camera, he testified the equipment malfunctioned and there was no recording of the events at issue here.

6. There was no properly articulated reason to stop the vehicle in the first place, therefore, there was no reasonable suspicion or probable cause to support the traffic stop of Lockhart's vehicle.

The State now presents a single issue asserting the trial court abused its discretion in granting the motion to suppress because the court failed to properly apply the law.

In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). The judge may believe or disbelieve all or any part of a witness's testimony, whether or not the testimony is controverted. *Id*. Under the bifurcated standard of appellate review for a ruling on a motion to suppress described in *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), we review the court's ruling for an abuse of discretion, but give almost total deference to the trial court's findings of fact especially when the findings are based on an evaluation of credibility and demeanor. *Ross*, 32 S.W.3d at 856. We review *de novo* the trial court's application of the law of search and seizure to its findings of fact. *Id*., *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000).

Here, the trial court was presented with a clear conflict in the testimony concerning whether Lockhart crossed the fog line and drove on the shoulder. The trial court did not accept all of Ecker's testimony. As noted, it rejected his assertion Lockhart "probably" hit the rumble strip on the shoulder. The court nonetheless found that "As Ecker caught up to the subject vehicle, he observed Lockhart's right side tires go over the solid white stripe 'a couple of times'." Although Lockhart does not expressly challenge the finding, he

4

emphasizes that the trooper's testimony concerning his commission of a traffic violation was disputed. He quotes his own testimony in which he denied committing any traffic violation after he passed Ecker's vehicle and before he was stopped, and specifically denied driving over the fog line. The trial court's finding of fact, though, states otherwise, and trooper Ecker's testimony clearly supports the finding. Responding to a question asking him to describe the violation he saw, Ecker testified: "The driver operated the vehicle so that the right side tires – the tires on the right side of the vehicle, the passenger side of the vehicle, crossed the solid white stripe, driving partially on the shoulder." When asked how far the tires crossed the line, he stated, "Enough to see blacktop in between the tire and the white stripe." He stated each transgression of the shoulder lasted "[n]o more than a few seconds. Just enough to drive on it, and then come back." As reflected in the trial court's finding, Ecker later indicated that the "right side tires crossed over the solid white stripe a couple times." It was the role of the trial court to evaluate the credibility and demeanor of the witnesses and we will, as we must, defer to its determination of the historic facts that the record supports. *Ross*, 32 S.W.3d at 856.

The Transportation Code authorizes a peace officer to arrest without warrant a person found committing a violation of the Code's subtitle that sets forth Rules of the Road. Tex. Transp. Code Ann. § 543.001 (Vernon 1999); *State v. Gray*, 158 S.W.3d 465, 469 (Tex.Crim.App. 2005); *Tyler v. State*, 161 S.W.3d 745, 748 (Tex.App.–Fort Worth 2005, no pet.). *See also* Tex. Code Crim. Proc. Ann. art. 14.01(b) (Vernon 1997). Witnessing what he reasonably believes to be a traffic violation provides the officer with probable cause to

5

conduct a traffic stop and detain the offender.[7]  *Tyler*, 161 S.W.3d at 748; *Nuttall v. State*, 87 S.W.3d 219, 222 (Tex.App.–Amarillo 2002 no pet.); *see Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).  *See also  Guzman*, 955 S.W.2d at 87 (probable cause is measured against belief of a reasonable person).

Section 545.058(a) of the Transportation Code provides that an operator of a vehicle may drive on an improved shoulder to the right of the main portion of the roadway if that operation is necessary and may be done safely, but only for certain listed purposes.  Tex. Transp. Code Ann. § 545.058(a) (Vernon 1999).  No evidence suggests that it was necessary for any of those listed purposes for Lockhart to drive on the shoulder.  In the face of the trial court's finding that he did so, we must conclude that the trooper had probable cause to initiate the traffic stop and detain Lockhart.[8]  *See Tyler*, 161 S.W.3d at 750 (finding probable cause for traffic stop for violation of § 545.058(a)); *Martinez v. State*, 29 S.W.3d 609, 612 (Tex.App.–Houston [1st Dist.] 2000, pet. ref'd) (suggesting violation of driving on shoulder statute as alternative justification for stop).

Lockhart also argues the trial court effectively determined that the trooper decided to stop him when Lockhart failed to change lanes ("pull over," in the trooper's words) when

---

[7] Case law also sometimes applies a "reasonable suspicion" standard to traffic stops for Rules of the Road violations.  *See, e.g., Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim. App. 2005) (citing *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002)).  *But cf. State v. Kurtz*, 152 S.W.3d 72, 79 (Tex.Crim.App. 2004) (distinguishing "arrests" for Rules of the Road violations from other investigative detentions).

[8] We express no opinion on the State's contentions that the trooper's stop of appellant also was justifiable because of a reasonable suspicion Lockhart was driving while intoxicated and because it was a proper exercise of the trooper's community caretaking function.

he passed the trooper's vehicle at milepost 62. Examination of the officer's subjective motive for a traffic stop is not a part of the court's evaluation of the reasonableness of the detention under search and seizure law. *See Crittenden v. State*, 899 S.W.2d 668 (Tex. Crim.App. 1995); *Garcia v. State*, 827 S.W.2d 937 (Tex. Crim.App. 1992); *Russell v. State*, 904 S.W.2d 191, 198-99 (Tex.App.–Amarillo 1995 pet. ref'd). The trial court's conclusions of law include one, perhaps better termed a finding of fact, stating that Trooper Ecker initiated his stop of Lockhart's vehicle on a "hunch." Even if true, Ecker's subjective motive does not render invalid his objectively reasonable stop of Lockhart based on his observation of a traffic violation. *See Russell*, 904 S.W.2d at 199.

Accordingly, we find the trial court abused its discretion in its application of the law to the facts by granting the motion to suppress. The order of suppression is reversed, and the cause remanded to the trial court for further proceedings.


James T. Campbell
Justice


Do not publish.

7