

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00256-CR

HARRELL RICHMOND THORNTON　　　　　　　　　　APPELLANT

V.

THE STATE OF TEXAS　　　　　　　　　　　　　　　STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 8 OF TARRANT COUNTY
### TRIAL COURT NO. 1211078

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted Appellant Harrell Richmond Thornton of misdemeanor driving while intoxicated (DWI), enhanced by one prior DWI conviction, and the trial court sentenced him to 365 days' confinement, probated for two years, and imposed a fine of $4,000. Appellant brings two points on appeal, contending that the trial court reversibly erred by failing to include a correctly worded article 38.23

---

[1]*See* Tex. R. App. P. 47.4.

instruction in the jury charge and by denying his motion to suppress. Because the trial court did not err, we affirm the trial court's judgment.

**Brief Statement of Facts**

At the hearing on the motion to suppress, Jason Morehouse testified that he was employed as a police officer with the City of Fort Worth. At approximately 2:06 a.m. on August 25th, 2010, Officer Morehouse was in a marked patrol vehicle, facing southbound at the intersection of Oakmont Boulevard and Bryant Irvin. There are two left turn lanes at this intersection. Officer Morehouse testified that he was stopped in the right-side left turn lane, and Appellant pulled up in the left-side left turn lane. Officer Morehouse testified that the signal lights for the turn lanes as well as the "straight" lanes were red. He explained that he was on his way home and on the phone with his wife as he sat at the intersection and admitted that he tends to "relax a little bit" when he is not on duty. Officer Morehouse further testified that drivers do not "pay attention as much to the roads" when they are talking on cell phones.

According to Officer Morehouse, the light for southbound traffic (the "straight" lanes) turned green, but the left-turn signal remained red. Officer Morehouse testified that Appellant nevertheless turned left on the red light. The officer activated his emergency lights and initiated a traffic stop of Appellant, which ultimately resulted in his arrest for DWI. Officer Morehouse's patrol vehicle was not equipped with a video camera. The record therefore does not include a

video recording of his contact with Appellant. Officer Morehouse's trial testimony was essentially the same as his testimony in the suppression hearing.

Patty Gillespie testified that she was a diesel mechanic with the United States Air Force. On August 25th, 2010, she and Appellant had been driving his mother's truck to determine why it was making a "squealing noise." Gillespie testified that she and Appellant had driven the truck in a parking lot for "a good 45 minutes to an hour" but could not determine what was causing the noise. After unsuccessfully trying to determine what was causing the noise, she and Appellant were heading to her apartment on Oakmont Boulevard. Gillespie was in the passenger seat. She testified that they were driving south on Bryant Irvin and pulled into the far left-hand turn lane at the Oakmont intersection. Gillespie further testified that they were stopped at the red light for fifteen to twenty seconds before a police car pulled up to their right.

According to Gillespie, she told Appellant that a police car was next to them and that she was going to try to determine what was causing the noise in the truck by using "the side of the car for the echo[e]s to bounce off to see if we c[ould]—front, back, rear, middle, you know." In this manner, Gillespie explained, she could determine if the noise was coming from the brakes or the transmission or a "belt in the front." To hear better, Gillespie rolled her window down and tilted her head out of the window. She testified that she definitely saw the officer and that she was watching the traffic light. According to Gillespie, the left-turn light turned green, and Appellant proceeded to make a left turn. Gillespie testified that

3

she travelled that street every day and was familiar with this intersection. Gillespie testified that she was "100 percent sure that light was green." She testified that Officer Morehouse's vehicle began to move a few seconds before Appellant began his left turn. Gillespie's trial testimony was essentially the same as her testimony in the suppression hearing.

At the suppression hearing, Appellant testified that on August 25th, 2010, he and Gillespie had been trying to determine "where a clanking noise or squealing noise was coming from underneath the truck." Appellant had asked Gillespie to help him determine what was wrong with the truck because she was a mechanic with the United States Air Force. Appellant testified that they drove the truck around in two separate parking lots but could not determine the cause of the noise. After driving around in the second parking lot, they decided to return to Gillespie's apartment. Appellant drove southbound and, at an intersection, pulled into the far left-hand turn lane. Appellant testified that Gillespie informed him that a police car was on her right and that she was going to use that car as a deflector of sound in order to isolate the squeaking noise that the truck was making. At that time, the left turn arrow was red. Appellant testified that the left turn signal changed to green, and he proceeded to turn left. Appellant "started real easy and then picked up speed so [they] could hear the clanking." Appellant testified that he and the officer turned at approximately the same time. Appellant further testified that he was "100 . . . percent positive" that

4

the left turn signal turned green before he made his left turn. Appellant did not testify at trial.

**Motion to Suppress**

Appellant argues in his second point that the trial court reversibly erred by denying his motion to suppress the fruits of the warrantless stop that he argues was not based on reasonable suspicion. We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[2] In reviewing the trial court's decision, we do not engage in our own factual review.[3] The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.[4] Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.[5]

---

[2]*Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

[3]*Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).

[4]*Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006).

[5]*Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The trial court chose to believe the testimony of the officer that he had observed a traffic violation and to disbelieve the defense witnesses denying the traffic violation. As the trial court noted in its fifth conclusion of law, "when a traffic law violation is committed in an officer's presence, the officer has probable cause to lawfully stop and arrest or detain the violator."[6]

Appellant and his passenger testified that he entered the intersection to make his left turn while the governing light was green. The officer testified that the light was red. He may have been distracted; he may even have been wrong. But the evidence before us shows merely a swearing match. The trial court was free to believe the witness he found most credible. The officer's testimony satisfied, at minimum, the standard necessary to justify the initial stop. We overrule Appellant's second point.

**Jury Charge**

At the charge conference, Appellant requested an article 38.23 instruction. The trial court included the following instruction in the jury charge:

> You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence against such accused. An officer is permitted, however, to make such a temporary investigative detention of a motorist if the officer has a reasonable suspicion that some activity out of the ordinary is or has occurred, that the person detained is connected with such activity, and that

---

[6]*Williams v. State*, 726 S.W.2d 99, 101 (Tex. Crim. App. 1986); *Tyler v. State*, 161 S.W.3d 745, 748 (Tex. App.—Fort Worth 2005, no pet.).

6

there is some indication that the activity is related to a crime or a criminal offense.

Now, bearing in mind these instructions, if you find from the evidence that on the occasion in question [Appellant] did not disregard a [the handwritten word "valid" is inserted here in the typewritten jury charge] signal device immediately preceding the stop and detention by the police officer involved herein, or you have a reasonable doubt thereof, then such detention of the accused would be illegal, and if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard any evidence obtained as a result of the temporary investigative detention, and you will not consider such evidence for any purpose whatsoever.

Appellant made no objection. Indeed, Appellant specifically stated, "No objections, Your Honor." Appellant argues in his first point on appeal, however, that the court's charge

erroneously phrased the factual dispute in terms of whether the Appellant disregarded a "valid signal device." . . . The Court's charge does not define "valid signal device." This left the jury with no ability to determine the true disputed fact (was the light red or green) within the 38.23 framework. Furthermore, the trial court's attempt to instruct the jury with the mandated language of 38.23 is confusing, at best.

In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends.[7] If error occurred, whether it was preserved determines the degree of harm required for reversal.[8] Unpreserved

---

[7]*Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

[8]*Id.*

charge error warrants reversal only when the error resulted in egregious harm.[9] The appropriate inquiry for egregious harm is a fact-specific one that must be performed on a case-by-case basis.[10]

In making an egregious harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole."[11] Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive."[12] The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused.[13]

A person who enters an intersection when the light governing his entering the intersection is red disregards a valid signal device. The trial court, under the

---

[9]*Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006).

[10]*Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

[11]*Almanza*, 686 S.W.2d at 171; *see generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*).

[12]*Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172).

[13]*Almanza*, 686 S.W.2d at 174.

facts of this case, did not commit error in providing the jury instruction now complained of. Even if we were to assume that the charge was erroneous, though, such error would not be egregious. The jury charge called to the jury's attention the disputed evidence about the signal light and instructed the jury that Appellant committed a traffic violation only if the jury found that he had entered the intersection against the light. The jury was instructed to consider the fruits of the stop only if the stop was lawful and pursuant to a traffic violation. We therefore overrule Appellant's first point.

**Conclusion**

Having overruled Appellant's two points on appeal, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 15, 2015