In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00157-CR
_____

JOSEPH HOMIN, Appellant

V.

THE STATE OF TEXAS, Appellee

**On Appeal from the 260th District Court**
**Orange County, Texas**
**Trial Cause No. D140099-R**

## MEMORANDUM OPINION

A jury convicted appellant Joseph Homin of felony driving while intoxicated as a habitual offender, and the trial court assessed punishment at twenty-five years of confinement. In six appellate issues, Homin asserts that the trial court erred by denying his motion to suppress, admitting improper expert testimony from two witnesses, admitting evidence regarding the results of his blood test, and he asserts that there was no probable cause for his arrest and that trial counsel provided ineffective assistance. We affirm the trial court's judgment of conviction.

1

FACTUAL BACKGROUND

Corporal Bryan Cooper of the Texas Department of Public Safety testified that he is certified to perform standardized field sobriety testing and Advanced Roadside Impaired Driving Enforcement (ARIDE). Cooper explained that there are three components to standardized field sobriety tests: the horizontal gaze nystagmus (HGN) test, the walk-and-turn, and the one-leg stand. According to Cooper, ARIDE is a course that provides more training regarding "impairment due to drugs[.]"

When asked how he determines what kind of drugs a person has taken, Cooper testified that hydrocodone will cause a person to be shaky or drowsy, slow to respond to questions, or lose balance. Cooper explained that hydrocodone is a narcotic analgesic in the opiate category, while alcohol is a central nervous system depressant. Cooper also explained that he frequently encounters drivers who are impaired by Xanax, Soma (carisoprodol), and Lorcet. When the prosecutor began to ask Cooper how Soma affects the human body, defense counsel objected that Cooper had not been qualified as an expert to testify in this regard under *Daubert*. The trial judge overruled the objection, and Cooper then explained that Soma is a central nervous system depressant and muscle relaxer that affects the body similarly to alcohol.

Cooper testified that while working the night shift, he saw a four-door gray Acura weaving and driving on the shoulder, and he initiated a traffic stop. Defense counsel then orally moved to suppress evidence of the stop "based upon failure of the State to adduce reasonable suspicion for the initiation of the traffic stop." The trial court overruled the objection. According to Cooper, Homin drove on the shoulder "twice for a couple of seconds[.]" Cooper testified that driving on the improved shoulder is a traffic violation and constitutes reasonable suspicion for a traffic stop. Cooper testified that driving on the improved shoulder was the only traffic violation he observed, and explained that Homin's driving on the shoulder did not fit within any of the circumstances under which it is permissible to drive on an improved shoulder.

Cooper testified that he initiated a traffic stop and made contact with Homin. Cooper asked Homin to get out of the vehicle, and he noticed that Homin's leg was injured. Cooper testified that Homin's speech was slurred and his hands were shaking. Homin told Cooper that he had a bad knee from being hit with a baseball bat. When Cooper asked Homin to produce his driver's license, Homin stated that he did not have his license. Homin told Cooper that he had not been drinking or taking any medications. Cooper explained that Homin continued to shake and was slow in responding to questions.

After Homin again denied having taken medication, Cooper asked Homin to perform standardized field sobriety tests. During the horizontal gaze nystagmus test, Cooper did not observe resting nystagmus in Homin, and Homin's eyes tracked equally. However, Cooper explained that Homin exhibited distinct and sustained nystagmus at maximum deviation. Based upon his observations of Homin's eyes, Cooper concluded that Homin "had been taking medications at that point, definitely something that was a central nervous system depressant." Cooper described Homin as upset and lethargic.

Cooper did not administer the walk-and-turn test because of Homin's injured knee. When Cooper administered the one-leg stand test, he noted that Homin exhibited three clues: Homin swayed while balancing, used his arms for balance, and put his foot down. In addition, when Cooper asked Homin to recite the alphabet starting from the letter "C" and stopping at the letter "M," Homin stopped at the letter "V." Homin was also unable to count down from one number to another. Cooper testified that based upon his observations of Homin's shaking, lethargy, slow response, performance on the field sobriety tests, and being unable to count backward, he concluded that Homin "was impaired on pain medication." A video recording of the stop was introduced into evidence and played for the jury.

4

Cooper testified that, as part of the process of making an arrest, the authorities inventory the vehicle. Defense counsel again moved to suppress and argued that the traffic stop was not based upon reasonable suspicion, and the court denied the motion. Soma pills were found in the vehicle, as well as a bottle of Soma prescribed to Homin, and Homin told Cooper that the pills belonged to him. During questioning after his arrest, Homin admitted that he had taken Lorcet and Soma. Homin refused to provide a blood sample. However, a blood sample was obtained without the defendant's consent.

At a hearing conducted outside the presence of the jury, the trial judge noted that the United States Supreme Court had declared the statute allowing the taking of blood without a warrant unconstitutional, and the trial judge stated that he had barred any mention of the taking of blood or the results of the blood test. Homin nevertheless requested that the trial court allow the blood test results into evidence. Homin stated, "That's the only thing that's going to turn me loose because I didn't have enough medicine in me to impair me." The trial judge indicated that he would allow the prosecutor to inquire about the results of the blood test, and Homin responded, "Thank you." Defense counsel responded that he had no objection.

Cooper then testified that a blood sample was taken from Homin without a warrant because the law in effect at that time required him to do so for "someone

5

that qualifies for a felony DWI[,]" and Cooper mailed the sample to the crime lab for analysis. Cooper explained that the Supreme Court has since ruled that it is unconstitutional to withdraw someone's blood without consent. Cooper testified that the report from the analysis of Homin's blood indicated that carisoprodol (Soma), hydrocodone, and meprobamate (a metabolite of carisoprodol) were detected.

Sarah Martin, a forensic scientist in the toxicology section of the Texas DPS Crime Lab in Austin, testified by telephone. Martin explained that she obtained a Bachelor of Science in Forensic Chemistry and a Master of Science in Forensic Science. Martin estimated that she has run approximately 5500 preliminary screening tests and approximately 5000 tests using the benzodiazepine ("benzo") confirmation method, which she used for Homin's blood sample.

According to Martin, the benzo confirmation method is used "when there is a response in the benzodiazepine category that has the benzodiazepine. It also has a muscle relaxer and its metabolite called Soma, and then it also has hydrocodone because we tend to see those three types of drugs together." Martin explained that the preliminary screenings test for amphetamines, barbiturates, benzodiazepines, muscle relaxers and their metabolites, cocaine and its metabolites, opiates, and PCP. According to Martin, after the preliminary drug screening is run, she

6

examines the results. She explained that with Homin's sample, "there was a response in the carisoprodol/meprobamate . . . analysis and also a response in the opiate category[,]" so she then performed the benzo confirmation method. Martin found carisoprodol and its metabolite, meprobamate, and hydrocodone in Homin's blood sample. Martin explained that she found carisoprodol at 5.8 milligrams per liter, meprobamate at 19 milligrams per liter, and hydrocodone was "detected."

Martin testified that the therapeutic range for carisoprodol is 2 to 6 milligrams per liter and the therapeutic range for meprobamate is 10 to 30 milligrams per liter. According to Martin, "driving studies have shown that when carisoprodol and meprobamate concentration are added up and are greater than 10 milligrams per liter[,] the driver routinely exhibited clinical signs of impairment." Defense counsel objected that Martin's testimony regarding the studies was hearsay, outside the area of expertise in which she had been qualified, and violated Rule 403 of the Texas Rules of Evidence, and the trial court overruled the objections. Martin testified that the total number of milligrams per liter found in Homin's sample was close to 26, but she explained that she could not say whether Homin was impaired based on those studies and her experience because "[e]very person has a different metabolism and is affected differently by drugs."

According to Martin, when carisoprodol and meprobamate, which are muscle relaxers, are combined with hydrocodone, which is a central nervous system depressant, they produce an additive effect, which means that the depressant effect of the three drugs would be greater in combination than if taken alone. Martin explained that central nervous system depressants slow down a person's reaction rate when driving and could also cause a person "to stumble, have dizziness, drowsiness, blurred vision, slurred speech, those type of effects." During cross-examination, Martin testified that because meprobamate is a metabolite of carisoprodol, meprobamate is not a drug that was taken separately. Martin explained that she detected hydrocodone in Homin's blood sample, but she did not measure the concentration. In addition, Martin testified that a finding of horizontal gaze nystagmus is consistent with ingestion of depressant medications. The State rested at the conclusion of Martin's testimony.

## ISSUE ONE

In his first issue, Homin argues that because there was no reasonable suspicion for the traffic stop, the trial court erred by denying his motion to suppress. Specifically, Homin contends that weaving within a single lane and briefly crossing the shoulder line do not provide reasonable suspicion to conduct a traffic stop.

8

"We review a trial court's ruling on a motion to suppress under a bifurcated standard of review." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We afford almost total deference to a trial judge's determination of historical facts, and the trial judge is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id*. We review *de novo* a trial court's application of the law of search and seizure to the facts, and we will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any applicable theory of law. *Id*. at 447-48.

Texas law provides that if it is necessary and may be done safely, a driver may drive on an improved shoulder to stop, stand, or park; to accelerate before entering the main traveled lane; to decelerate before making a right turn; to pass another vehicle that is slowing, stopped on the main traveled part of the highway, disabled, or preparing to make a left turn; to allow a faster vehicle to pass; as permitted or required by an official traffic-control device; or to avoid a collision. Tex. Transp. Code Ann. § 545.058 (West 2011). As explained by Cooper during his testimony and depicted in the video of Homin's vehicle, Homin's driving on the shoulder did not fit within any of the circumstances under which driving on the shoulder is permissible; therefore, Cooper had sufficient probable cause for a traffic stop. *See Tyler v. State*, 161 S.W.3d 745, 750 (Tex. App.—Fort Worth 2005,

9

no pet.). Giving appropriate deference to the trial court's findings and reviewing *de novo* the trial court's application of the law to the facts, we conclude that Homin's act of driving on the shoulder provided reasonable suspicion for the traffic stop. *See id.*; *Valtierra*, 310 S.W.3d at 447-48. Accordingly, we overrule issue one.

ISSUES TWO AND THREE

In issue two, Homin complains that the trial court reversibly erred by admitting expert testimony from Cooper, and in issue three, Homin makes the same complaint with respect to expert testimony from Martin. We address issues two and three together.

A witness is qualified as an expert by knowledge, skill, experience, training, or education. Tex. R. Evid. 702. The expert must have a sufficient background in a particular field, and the witness's background must go to the matter on which the witness is to offer an opinion. *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). "The focus is on the fit between the subject matter at issue and the expert's familiarity with it." *Id*. "Because the spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses appropriate qualifications as an expert on a specific topic in a particular case." *Id*. If a witness is not testifying as an expert, opinion testimony is limited to opinions that are rationally based on the witness's perception and

10

"helpful to clearly understanding the witness's testimony or to determining a fact in issue." Tex. R. Evid. 701. "When a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony." *Osbourn v. State*, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002).

We review the admission of evidence, including expert testimony, for abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010); *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996). Error may not be predicated on a ruling that admits evidence unless a party's substantial rights are affected. Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b). We will not reverse if, after examining the entire record, we have fair assurance that the error did not influence the jury or had but slight effect. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

With respect to Cooper, Homin contends that the trial court erred by admitting his testimony regarding how carisoprodol affects the human body over defense counsel's *Daubert* objection. With respect to Martin, Homin complains that the trial court erred by admitting her testimony regarding the combined effect of the drugs that were found in Homin's blood sample, as well as her testimony

11

about what driving studies have shown with respect to drug concentrations and impairment. Homin also complains of Martin's testimony regarding hydrocodone.

As discussed above, Cooper testified that he is certified to perform standardized field sobriety testing and Advanced Roadside Impaired Driving Enforcement (ARIDE). He also explained that Soma is a central nervous system depressant and muscle relaxer that affects the body similarly to alcohol. Martin described her education and experience, and she testified that driving studies have shown that when carisoprodol and meprobamate concentrations are added together and the total is greater than 10 milligrams per liter, drivers routinely exhibited clinical signs of impairment. In addition, Martin testified that when muscle relaxers carisoprodol and meprobamate are combined with hydrocodone, which is a central nervous system depressant, an additive effect results, meaning that the depressant effect of the drugs combined is more powerful than if they were taken alone. Martin also testified that hydrocodone was detected in Homin's blood sample, but she did not specify an amount.

Assuming without deciding that the trial court abused its discretion by allowing Cooper's testimony regarding the effects of Soma on the body and Martin's testimony regarding hydrocodone, the combined effects of the drugs, and the results of driving studies, we cannot say that Homin's substantial rights were

12

affected. *See* Tex. R. Evid. 103(a); *see also* Tex. R. App. P. 44.2(b). The jury heard evidence that Homin drove on the improved shoulder twice and weaved within his lane, and the jury viewed a video recording that showed Homin driving on the shoulder and Homin taking the field sobriety tests. The jury also heard Cooper's testimony regarding the clues Homin exhibited during the field sobriety tests and Homin's inability to count down from one number to another or to accurately recite a portion of the alphabet. In addition, the jury heard testimony that Homin's speech was slurred, his hands were shaking, he was lethargic, and he was slow in responding to questions. The jury also heard evidence that Soma was found during an inventory search of Homin's vehicle, and Homin admitted that the Soma belonged to him and that he had taken Soma and Lorcet. Furthermore, the jury heard Cooper testify that he believed Homin was impaired.

Even without the complained-of testimony from Cooper and Martin, the record contains sufficient evidence from which the jury could find Homin guilty, beyond a reasonable doubt, of driving while intoxicated. *See Ladd v. State*, 3 S.W.3d 547, 568 (Tex. Crim. App. 1999) (Given all of the evidence before the jury, it was unlikely that the admission of the complained-of evidence had a substantial effect on the jury's verdict.). After examining the record as a whole, we

have fair assurance that the error, if any, did not influence the jury, or had but slight effect. *See Taylor*, 268 S.W.3d at 592. We overrule issues two and three.

ISSUE FOUR

In his fourth issue, Homin argues that there was no probable cause for his arrest. Specifically, Homin asserts that because his arrest "was based on nothing more than officer Cooper's improper and unfounded determination that he was impaired on pain medication, as well as his improper reliance on non-standardized tests, no probable cause existed."

When an officer makes a warrantless arrest, "courts must determine whether the arresting officer had probable cause" to believe that the citizen is engaged in criminal activity. *State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011). "'A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.'" *Id*. at 412 (quoting Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 2005)). The ultimate question is whether the facts and circumstances within the officer's knowledge "'were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense.'" *Id*. (quoting *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002)).

As discussed above, Cooper observed Homin committing a traffic violation by impermissibly driving on the shoulder. Cooper had the authority to stop Homin to investigate. *See Magic v. State*, 878 S.W.2d 309, 311-12 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (Officers were authorized to stop a subject who was committing a traffic violation by walking on the road instead of the sidewalk.). A person is intoxicated if he does not have the normal use of his mental or physical faculties due to the introduction of a substance into his body. Tex. Penal Code Ann. § 49.01(2)(A) (West 2011). Cooper observed that Homin's speech was slurred, his hands were shaking, and he was slow in responding to questions Cooper also noted that Homin exhibited nystagmus at maximum deviation and exhibited clues during standardized field sobriety testing. Cooper explained that he determined that Homin was impaired due to medication. On this record, we conclude that Cooper had probable cause to arrest Homin. *See Woodard*, 341 S.W.3d at 409-10, 412; *see also* Tex. Penal Code Ann. § 49.01(2)(A). We overrule issue four.

## ISSUE FIVE

In his fifth issue, Homin argues that to the extent trial counsel failed to preserve the alleged errors of which he complains in issues one through four, his trial counsel provided ineffective assistance. This Court has not determined that

15

trial counsel failed to preserve any of the issues about which Homin complains. However, we will nevertheless address Homin's fifth issue.

To establish ineffective assistance, Homin must satisfy the following test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Perez v. State*, 310 S.W.3d 890, 892-93) (Tex. Crim. App. 2010). Allegations of ineffective assistance "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's conduct was reasonable and professional." *Id*.

Homin filed a motion for new trial, in which he raised numerous issues, including ineffective assistance of counsel. However, the record does not reflect that the trial court conducted a hearing on the motion for new trial. The allegation that trial counsel failed to preserve issues for review must be firmly grounded in the record before we may find that counsel provided ineffective assistance. *See Thompson*, 9 S.W.3d at 813. Accordingly, Homin cannot defeat the strong presumption that trial counsel's assistance was reasonable and professional. *See Bone*, 77 S.W.3d at 833; *see also Thompson*, 9 S.W.3d at 814. We overrule issue five.

## ISSUE SIX

In his sixth issue, Homin asserts that the trial court "committed fundamental error" by admitting the results of his blood test. As explained in detail above, the trial court found the blood test results inadmissible, but agreed to admit the results into evidence after Homin explicitly requested that the trial court do so. The doctrine of invited error applies when "'a party by a request for a ruling leads the court into error[.] [H]e should be precluded from claiming a reversal of the judgment by reason of the error so committed. To hold otherwise would be to permit him to take advantage of his own wrong.'" *Prystash v. State*, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (quoting *Carbough v. State*, 49 Tex. Crim. 452, 455,

17

93 S.W. 738, 739 (1906)). "Just as the law of entrapment estops the State from making an offense of conduct that it induced, the law of invited error estops a party from making an appellate error of an action it induced." *Id*.

Because the trial court had ruled that the blood test results were inadmissible and would not have admitted the evidence absent Homin's request, the doctrine of invited error precludes Homin from complaining on appeal about the trial court's granting of his request to admit the blood test results into evidence. *See id*. Accordingly, we overrule issue six. Having overruled each of Homin's issues, we affirm the trial court's judgment of conviction.[1]

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on June 1, 2016
Opinion Delivered July 27, 2016
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[1]In his brief, Homin "objects to the Court's consideration of State's Exhibit 5, part 2, and moves to strike it from the appellate record." Homin states in his brief that "this portion of State's Ex. 5 was not played for the jury." The State indicated in its brief that it had no objection to Homin's request. Therefore, this Court did not view the complained-of portion of State's Exhibit 5.