In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00290-CR
NO. 09-15-00291-CR
NO. 09-15-00292-CR
NO. 09-15-00293-CR

_____

**DYWAN BROOKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause Nos. CR31009, CR31010, CR31011, and CR31012**

**MEMORANDUM OPINION**

After the trial court denied his motion to suppress evidence, appellant Dywan Brooks (Brooks) pleaded guilty to one count of evading arrest, one count of tampering with evidence, and two counts of possession of at least one gram but less than four ounces of a controlled substance. The trial court found the evidence supported a finding of guilt on all counts and assessed punishment on each count at

1

twenty years' confinement, with the sentences to run concurrently. Brooks raises three issues on appeal. We affirm the trial court's judgments.

FACTUAL BACKGROUND

Brooks was indicted for one count of evading arrest, one count of tampering with evidence, and two counts of possession of at least one gram but less than four grams of a controlled substance. *See* Tex. Penal Code Ann. §§ 37.09(a), (c) 38.04(a), (b)(1), (West Supp. 2015); Tex. Health & Safety Code Ann. § 481.115(c) (West 2010).[1] The indictment included enhancements for prior convictions. *See* Tex. Penal Code Ann. § 12.42 (West Supp. 2015). On or about April 8, 2015, Brooks filed a motion to suppress, which alleged, in relevant part, that Brooks

> . . . was pulled over without reasonable suspicion for an alleged unsafe lane change in violation of the Texas Traffic Code and changing lanes prior to one hundred feet of intersection. As to the unsafe lane change, the officer does not state any specific traffic code violation nor ticket Mr. Brooks for it. Furthermore, changing lanes 100 feet prior to the intersection is not a violation in Texas, nor did the officer ticket Mr. Brooks for it.

The motion further argued that, because the officer who made the stop "did not have reasonable suspicion that Mr. Brooks violated a traffic offense[,] the evidence in this matter must be suppressed." The trial court conducted a hearing on the

---

[1] We cite to the current version of statutes in this opinion inasmuch as any amendments subsequent to the date of the offense do not affect our analysis of this case.

2

motion on July 6-7, 2015. At the hearing on the motion to suppress, the State presented testimony from four witnesses. The trial court also heard arguments from the State and from Brooks. Thereafter, the trial court denied the motion to suppress.

Testimony of Deputy Taylor Wells

Liberty County Sheriff's Deputy Taylor Wells (Wells) testified that he was on duty on March 27, 2014, working "high drug volume[] areas." He stated that he works in the Criminal Interdiction Unit, and he agreed that, on that date, he was by himself and he was "out looking for drug activity[.]"

Wells testified that Brooks was driving westbound in the middle lane on Highway 90, another vehicle was slightly behind Brooks in the right lane, and Wells was about four-to-five car lengths behind Brooks. Wells saw Brooks use a turn signal and pull into an Exxon station just past the intersection of Highway 90 and Bowie Street, and that in the process, Brooks cut off the vehicle in the right lane. According to Wells, both drivers had to slam on their brakes to keep from hitting one another. Wells agreed that he regarded Brooks's lane change from the middle lane and across the right lane as unsafe and that Brooks's car could have collided with the vehicle in the right lane.

3

Wells explained that, after he observed Brooks's actions, Wells slowed down, turned on the emergency lights, and followed Brooks onto the Exxon property in an attempt to stop Brooks. He also stated that he had to make "an evasive lane change" himself in order to get behind Brooks to make the traffic stop. After both his vehicle and Brooks's vehicle were stopped, a woman exited Brooks's vehicle and was trying to go into the Exxon station, and Wells called out to her and told her that she needed to come back to the car. Wells testified that he found it "extremely suspicious[]" that a person got out of a vehicle he had just stopped. Wells stated that "[t]ypically when something like that happens, it leads [him] to believe . . . something suspicious is going on and perhaps they're trying to hide something or get rid of something. It definitely raised [his] suspicion as to the chain of events."

Wells further explained that he identified himself to Brooks and stated to Brooks the reason for the stop. Wells was talking with Brooks while Brooks was still seated inside of Brooks's vehicle. At that time, Wells observed "in plain view, in the cup holder, a plastic bag that had been tied-up with a crystalline-like substance that [Wells] believed to be methamphetamine." According to Wells, when he observed the bag, he asked Brooks to step out of the vehicle. Wells explained that he believed the substance in the bag was methamphetamine based

4

on his training, experience, and involvement with methamphetamine investigations. Wells testified that he asked Brooks what was in the bag in the center console of his car. Wells explained that Brooks then "reached in, in between [Wells] and the car, grabbed the bag, held it directly in front of [Wells's] face and took off running."

Wells testified that Brooks ran north and that Wells "continued to chase [Brooks] on foot continuously yelling to stop." Wells said he lost his footing and fell when crossing some train tracks, but he then continued to chase Brooks and eventually caught Brooks. Wells explained to the court that, as a result of his fall, he received a three-inch laceration to one leg, his badge bent in half, and his ballistic vest ripped. According to Wells, once he fell on the train tracks, he was able to use his radio to call for assistance and other deputies also arrived. On cross-examination, Wells said that when Deputy Young arrived, Young told Wells that they were "hot," meaning the events were then being recorded. Wells denied searching Brooks at that time, and Wells explained that after he had put Brooks in hand restraints and other deputies had arrived, he retraced his steps and located "a clear plastic baggie with a crystalline-like substance" that he believed was methamphetamine.

Wells testified that the video camera in his vehicle was not operating at that time, and there was no video of the events leading up to his interaction with Brooks at the Exxon station. On cross-examination, Wells agreed he had asked the Exxon station for surveillance video and that he had received a copy, but Wells could not "recall exactly" whether he obtained video from the store clerk on the day of the incident because, at the time, he was "still dazed and confused from hitting the train tracks[.]" On redirect, Wells admitted he was mistaken about having acquired recordings of video surveillance cameras at the Exxon property.

Wells agreed that his report of the incident, written four days after the incident, stated that when Brooks observed Wells driving behind him, Brooks "immediately traveled across one lane of traffic, cutting off the vehicle in the lane next to them." And Wells also agreed that Brooks made a right turn from the middle lane, knowing that an officer was behind him. Wells testified that he pulled Brooks over for an unsafe lane change and for changing lanes prior to 100 feet of an intersection. On cross-examination, Wells agreed that changing lanes prior to 100 feet of an intersection is "not a Traffic Code violation[.]" Wells also agreed that he did not give Brooks a ticket for an unsafe lane change or for changing lanes prior to 100 feet of an intersection.

6

Testimony of Peggy Bourgeois

Peggy Bourgeois (Bourgeois) testified that she is the custodian of evidence for the Liberty County Sheriff's Department. Bourgeois testified that no cds, dvds, or digital recordings from surveillance cameras at an Exxon station were in the evidence locker associated with this case. She explained that she did receive a cd of audio/video from Deputy Paul Young, but that she did not receive anything from Deputy Wells.

Testimony of Deputy Paul Young

Deputy Paul Young (Young), with the Liberty County Sheriff's Office, testified that he works in narcotics enforcement and that he was on duty on March 27, 2014. Young stated that, while he was at the county fuel pumps, he heard a radio call that Wells was on foot chasing a subject near the Exxon station on Highway 90, and Young responded to the call. Young explained that when he arrived, Brooks was in hand restraints, and lying face down on the ground. Young assisted Brooks to stand up and Young conducted a search of Brooks. Young testified as follows:

> A. I just began to pat him down to check his pockets. At one point I found his wallet in the back of his pocket that identified him as Dywan Brooks. From there, continued with the search of his pockets. And as I got down to his right pants leg, the -- I noticed a clear plastic bag hanging out under his pants leg there that contained I guess numerous -- what we know as crack rocks.

7

Q. Did you recognize these to be crack rocks based on training and experience?

A. Yes.

. . . .

. . . . when I advised [Deputy Fasolino] to get the camera, Mr. Brooks began becoming belligerent and started shaking his leg and trying to kick it off. And at that point some of the rocks started falling onto the ground and he started trying to stomp them with that right leg. We had to try to detain his right leg and then put him back across the hood to keep him from destroying anymore [sic] of the evidence. Eventually another deputy came along and put him in a wrist hold and made him stop. We were able to remove him from that, collect the bag from him, and then photograph and collect the crack rocks from the ground.

Young identified State's Exhibit 1 as a copy of an accurate audio and video recording of the conversation and images detected and recorded by the camera in Young's patrol unit that day. After the recording was played, Young identified Brooks in the courtroom as the person depicted in the recording. Young also explained that his vehicle had a newer recording system than Wells's vehicle, and that Young had not experienced any failures with the system in his own vehicle.

On cross-examination, Young testified that when he arrived at the scene, Deputy Wells was "worked up, frustrated[]" and he agreed that when he told Wells "we're hot[]" it meant they were on audio and video. Young also agreed that the officers moved Brooks out of the way of the camera, but he explained that Brooks

8

had to be moved because "he was trying to destroy the evidence." Young agreed that at the end of the recording contained on State's Exhibit 1, Young can be heard stating "that it was a good lick[]" and he explained that meant "it was a good lick, a good bust."

Testimony of Sergeant Brett Audilet

Sergeant Brett Audilet (Audilet) testified that he was the fleet manager with the Liberty County Sheriff's Office and that his responsibilities included purchasing and maintenance. Audilet agreed he knew that the camera system in Wells's vehicle had problems but that it was not cost-effective to repair the "old and outdated" camera systems.

Brooks did not offer any witnesses. After hearing evidence and argument, the trial court denied the motion to suppress, stating as follows:

> The Court concludes that based on the testimony and evidence that the officer -- Officer Wells in this case had probable cause to stop the defendant. When the defendant grabbed what appeared in plain view to the officer to be illegal narcotics, the officer had every right to pursue the defendant. He did and had every right to arrest him.
> The Motion to Suppress is denied.

Thereafter, the State moved to dismiss paragraphs four and five of the indictments in all four cause numbers, which the court granted. Brooks pleaded "guilty" to the remaining charges in all four cause numbers and pleaded "true" to the enhancement paragraphs. The court found the evidence supported a finding of guilt

9

as to all charges and assessed punishment at twenty years for each charge, with the sentences to run concurrently. Brooks timely filed a notice of appeal.

## ISSUES ON APPEAL

In his first issue, Brooks argues that the trial court erred by finding Deputy Wells's testimony "trustworthy." In his second issue, Brooks argues that the trial court erred in admitting over objection certain testimony pertaining to events alleged to have occurred after the initial traffic stop. And in his third issue, Brooks contends the trial court erred by denying his motion to suppress because Wells lacked probable cause to make the initial traffic stop.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447-48 (Tex. Crim. App. 2010). We review the trial court's factual findings for an abuse of discretion, but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). At a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony, and a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *Valtierra*, 310 S.W.3d at 447; *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007) (quoting *State v.*

10

*Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999)); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

In reviewing a trial court's ruling, the appellate court does not engage in its own factual review. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, "especially if those are based on an assessment of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give the same deference to the trial court's conclusions with respect to mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review purely legal questions de novo as well as mixed questions of law and fact that do not turn on credibility and demeanor. *Crain*, 315 S.W.3d at 48. We also review de novo "whether the totality of [the] circumstances is sufficient to support an officer's reasonable suspicion of criminal activity." *Id.* at 48-49.

In the absence of any findings of fact, either because none were requested or none were spontaneously made by the trial court, an appellate court must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011) (citing *Ross*, 32 S.W.3d at 857); *see also*

11

*Aguirre v. State*, 402 S.W.3d 664, 667 (Tex. Crim. App. 2013) (Cochran, J., concurring) ("in the absence of specific findings, an appellate court's hands are tied, giving it little choice but to 'view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record'").[2] We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Arguellez v. State*, 409 S.W.3d 657, 662-63 (Tex. Crim. App. 2013).

WITNESS CREDIBILITY

In his first issue, Brooks argues that the trial court abused its discretion in finding Wells's testimony to be "trustworthy" because the testimony was

---

[2] The majority in *Ross* stated that a non-prevailing party on a motion to suppress should attempt to get the trial judge to provide the rationale for his ruling. *See State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006) (discussing *State v. Ross*, 32, S.W.3d 853, 855 (Tex. Crim. App. 2000)). The trial court should provide factual findings supporting the denial of a motion to suppress when the losing party requests such findings. *Id*. at 698-99. In the case at bar, Brooks did not request the trial court to enter findings of fact and conclusions of law. Nevertheless, we note that the trial court made a verbal statement regarding the basis for its ruling in the reporter's record.

inconsistent and lacked specific articulable facts to justify the traffic stop. In particular, Brooks questions whether Wells actually wrote the report and contends that Wells's testimony conflicted with Deputy Young's testimony. He also argues that Wells was inconsistent regarding whether he obtained a video from Exxon, whether Brooks crossed a lane of traffic, the date of the incident, the road conditions at the time of the incident, and the make of the vehicle Brooks was driving.

Brooks had an opportunity at the suppression hearing to cross-examine or impeach Wells. Other witnesses also testified on behalf of the State, and Brooks offered no witnesses of his own. In overruling the motion to suppress, the trial court stated on the record that the court found that Deputy Wells "had probable cause to stop the defendant[]" and "had every right to arrest" Brooks. Although the trial court made no explicit finding that it regarded Wells and the other officer's testimony as "trustworthy," we assume that the trial court made such implicit findings of fact that support its ruling as long as those findings are supported by the record. *See Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013) (citing *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005)). Given the record before us, we conclude that Deputy Wells's testimony at the suppression hearing supports the trial court's rulings. *See Keehn v. State*, 279 S.W.3d 330, 334 (Tex.

13

Crim. App. 2009) (holding that appellate court must consider all evidence in record, viewed in favor of trial court's fact findings, and determine whether it supports trial court's finding). The trial court was the sole and exclusive trier of fact and judge of the credibility of the witnesses. *See Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). The record before us supports the trial court's implicit finding that Wells was a credible witness. We overrule Brooks's first issue on appeal.

ADMISSION OF EVIDENCE

In his second issue, Brooks complains that the trial court erred in admitting over objection certain testimony pertaining to events that occurred after the initial traffic stop. Brooks argues that a suppression hearing pertains only to the admissibility of certain evidence and not its sufficiency. *See State v. Marquez*, 281 S.W.3d 56, 60 (Tex. App.—El Paso 2008, pet. stricken) ("a pretrial motion to suppress evidence is not a proper venue for litigating any or all of the elements of an offense"); *see also State v. Iduarte*, 268 S.W.3d 544, 551-52 (Tex. Crim. App. 2008) ("[T]he statutes authorizing pre-trial proceedings do not contemplate a 'mini-trial' on the sufficiency of the evidence to support an element of the offense.") (citing *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005)

("The purpose of a pre-trial motion is to address preliminary matters, not the merits of the case itself.")).

Brooks contends that during Deputy Wells's testimony, Brooks objected to Wells's testimony concerning what Wells observed while standing at the driver's window of Brooks's vehicle after having stopped Brooks. According to the record, Brooks lodged an objection that the testimony was not relevant and that the testimony was "outside the scope of this suppression hearing." The trial court overruled the objections without comment. Brooks also objected to State's Exhibits 2 and 3, which the State described as "demonstrative drawings." Brooks objected that the two exhibits were "outside the scope of the suppression hearing." The court overruled the objection and admitted the evidence. Brooks also objected to "any testimony" by Deputy Paul Young, before Young testified, asserting that "He arrived on the scene way after the fact, way after the initial stop, and has no personal knowledge as to the -- the initial stop in this case." The trial court indicated it would allow Deputy Young's testimony, explaining "we'll see what he has to say. You can object as he testifies, if you wish." After the State asked Deputy Young about what he observed upon arriving at the location where Deputy Wells and Brooks were, Brooks objected that such testimony was beyond the scope

of the suppression hearing and that Young was "at the county fuel pumps at the time of the initial stop." The trial court overruled the objection and stated:

> Overruled. I mean, it bears. The officer testified that Mr. Brooks ran.
>
> . . . .
>
> And if -- if Deputy Young saw them away from the gas station, well, that bears on the credibility of the -- of the arresting officer that he wasn't just sitting at the car, you know, if he was at a different location where the stop occurred. There are a lot of things it's relevant to, so your objection is overruled.

When the State asked whether Deputy Young could identify the voices on the recording made by the camera in his vehicle, Brooks objected that such testimony was outside the scope of the initial stop. The court overruled the objection and explained:

> The objection is overruled. I mean, it bears on -- you know, a stop, true. The officer has to have probable cause to stop and then, you know, he needs to proceed with the -- the reason for the stop with haste, basically. But if somebody runs immediately upon being stopped, this video potentially would show or depict evidence that -- that would indicate that the officer was telling the truth, that he ran, and show where -- where they were, that they were in close proximity. And so this is highly probative of the issues at hand for this Court. So your objection is overruled.

Brooks's final complaint relates to when the State asked Deputy Young about the location where he encountered Deputy Wells and Brooks. At that point, Brooks

objected that the testimony was not relevant and outside the scope of the suppression hearing. The court expressly overruled the objection.

In general, we review a trial court's admission of evidence under an abuse of discretion standard. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (citing *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007)). We consider the ruling in light of what was before the trial court at the time the ruling was made, and we will uphold the ruling of the trial court if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009). On the record before us, we conclude that it was within the zone of reasonable disagreement for the trial court to allow the complained-of testimony and evidence. We cannot say the trial court abused its discretion. We overrule Brooks's second issue.

## THE INITIAL TRAFFIC STOP

In his third issue, Brooks argues that the trial court erred in denying his motion to suppress because Deputy Wells lacked probable cause to make the initial traffic stop. Brooks argues that the trial court erred because of the inconsistencies

17

in Wells's testimony, and because one of the reasons for the stop, changing lanes within 100 feet of an intersection, "is not probable cause." [3]

"An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). "[A]n officer is generally justified in briefly detaining an individual on less than probable cause for the purposes of investigating possibly-criminal behavior where the officer can 'point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). This is an objective standard that disregards the subjective intent of the officer and requires only some minimal level of justification for the stop. *Terry*, 392 U.S. at 21-22; *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010). However, the officer must have more than an inarticulable hunch or

---

[3] Brooks does not raise any argument or challenge concerning the search of his person or a search (if any) of his vehicle

18

mere good-faith suspicion that a crime was in progress. *Crain*, 315 S.W.3d at 52 (quoting *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981)). In deciding whether an officer had a reasonable suspicion, we examine the facts that were available to the officer at the time of the investigative detention. *Terry*, 392 U.S. at 21-22; *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). This determination is made by considering the totality of the circumstances, giving the factfinder almost total deference to the determination of historical facts, and reviewing de novo the trial court's application of law to facts not turning on credibility. *Ford*, 158 S.W.3d at 492-93.

An unsafe lane change is a traffic violation. *See* Tex. Transp. Code Ann. § 545.060 (West 2011); *Dunn v. State*, 478 S.W.3d 736, 742 (Tex. App.—Fort Worth 2015, pet. refused) (affirming denial of motion to suppress where officer initiated the traffic stop based on violation of section 545.060(a) and the officer's testimony established that defendant drifted into officer's lane, requiring the officer to slow down to avoid a collision, and that the defendant then drifted the other direction, topping the broken white line and prompting a driver in the adjacent lane to brake); *Tyler v. State*, 161 S.W.3d 745, 748 (Tex. App.—Fort Worth 2005, no pet.). In this matter, Deputy Wells testified that he observed Brooks turn right from the middle lane across a lane of traffic and in front of another car, and that both

drivers had to slam on the brakes to avoid a collision. Wells said that he stopped Brooks for two suspected traffic violations—an unsafe lane change and changing lanes prior to 100 feet of an intersection—although Wells admitted at trial that the latter reason is no longer a traffic violation.

Based on the totality of the circumstances, we conclude on the record before us, that the hearing contains sufficient "specific articulable facts," when combined with rational inferences from those facts, from which the trial court could have reasonably concluded that the Deputy's initial detention of Brooks was objectively reasonable, that the Deputy had a good-faith suspicion that Brooks had engaged in a traffic violation, and that probable cause existed to support the initial traffic stop. *Crain*, 315 S.W.3d at 52. We therefore conclude that the trial court did not err in overruling the motion to suppress. We overrule Brooks's third issue.

Having overruled all issues on appeal, we affirm the trial court's judgments.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on May 25, 2016
Opinion Delivered June 15, 2016
Do Not Publish

Before Kreger, Horton and Johnson, JJ.

20